```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

TRAVIS L. KITCHEN,            :
                              :
         Plaintiff            :   CIVIL No. 1:14-CV-00315
                              :
    vs.                       :   Hon. John E. Jones III
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
         Defendant            :

**MEMORANDUM**

May 18, 2015

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Travis L. Kitchen's claim for social security supplemental security income benefits for the period October 1, 2005, through September 30, 2009.

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

The issues raised in this appeal implicate two SSI applications filed by Kitchen.  As will be mentioned below the alleged disability onset date was amended by Kitchen to September 9, 2007, during proceedings on a second SSI application, and he was found disabled as of September 9, 2007, by a different administrative law judge based on that second

application, although not receiving benefits from that date forward.[1]  Consequently, the relevant time period is from September 9, 2007, until December 13, 2012, the date an administrative law judge issued a decision on the first SSI application after a remand to the Commissioner by this court.

The complaint in the above-captioned case was filed on February 20, 2014, and the administrative record on April 22, 2014.[2]  Supporting and opposing briefs were filed and the case became ripe for disposition on December 22, 2014, when Kitchen filed a reply brief.

Counsel for the parties are familiar with the five-step sequential evaluation process that the Commissioner utilizes and the standard of review.  The instant appeal only presents a legal issue.[3]

---

[1]The second SSI application was filed on September 9, 2009. Supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See 20 C.F.R. § 416.501. Consequently, based on the second application Kitchen was not eligible to receive SSI benefits until October 1, 2009.

[2]The administrative record is 803 pages in length and we have thoroughly reviewed that record.

[3]A trial court has plenary review of all legal issues decided by the Commissioner. Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007). The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is highly deferential, and is satisfied with "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.

For the reason set forth below the court will remand the case to the Commissioner with directions that if Kitchen meets the financial eligibility requirements he should be awarded benefits starting on September 9, 2007, instead of October 1, 2009.

**DISCUSSION**

Kitchen, who was born in the United States on May 29, 1972, graduated from high school in 1990 and can read, write, speak and understand the English language and perform basic mathematical functions, including counting change, handling a savings account and using a checkbook and money orders.  Tr. 52, 67, 72  and 563.[4] During his elementary and secondary schooling, Kitchen attended regular education classes. Tr. 72. After graduating from high school, Kitchen did not complete any other type of training or schooling. Id.  Although Kitchen worked briefly as a laborer at a factory, he has no past relevant employment.[5] Tr. 78 and 456.  Records of the Social Security

---

1999)(internal citation omitted).

[4]References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of the Answer on April 22, 2014.

[5]Past relevant employment in the present case means work performed by Kitchen during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565. To be considered past relevant work, the work must also amount to substantial gainful activity. Pursuant to Federal Regulations a person's earnings have to rise to a certain level to be considered substantial gainful activity.

Administration reveal that Kitchen had employment in 1993, 1996, and 1999, and his total earnings were $3104.55. Tr. 456. His highest annual income was $2070.30 in 1999. Id. Kitchen has not worked since June, 1999. Tr. 68. Sometime in 1999, Kitchen was charged with several state criminal offenses, including sexual abuse of children, and was found guilty and sentenced to a minimum term of imprisonment of 4 years and 10 month to a maximum of 14 years and 8 months. Tr. 112. In September of 2005, Kitchen was released on parole to a community corrections center located in Scranton. Tr. 104.

Kitchen protectively filed[6] his first application for supplemental security income benefits on October 1, 2005. Tr. 51-57. In the application Kitchen claimed that he became disabled on September 30, 2005.[7] Tr. 52. Kitchen alleged that he was unable to engage in substantial gainful activity because of congenital club feet, spontaneous dislocation fracture of the radial head of the left elbow, schizoaffective disorder, bipolar disorder, antisocial personality disorder and intermittent

---

[6]Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[7]A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

explosive disorder. Tr. 38. The application was initially denied by the Bureau of Disability Determination[8] on May 8, 2006. Tr. 38-42. On May 24, 2006, Kitchen requested a hearing before an administrative law judge. Tr. 43. After 14 months had elapsed, a hearing was held on July 24, 2007. Tr. 307-332. On September 8, 2007, the administrative law judge issued a decision denying Kitchen's application. Tr. 16-26. On November 1, 2007, Kitchen filed a request for review with the Appeals Council of the Social Security Administration's Office of Disability Adjudication and Review, and on February 5, 2010, the Appeals Council concluded that there was no basis upon which to grant Kitchen's request for review. Tr. 9-12 and 304-306. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On October 18, 2010, Kitchen filed a complaint in this court and the case was assigned to Judge Nealon. Kitchen v. Astrue, Civil No. 10-2150 (M.D.Pa. Oct. 21, 2012). On February 3, 2012, Judge Nealon granted the appeal and remanded the case to the Commissioner for further proceedings. Id., Docs. 19 & 20, Memorandum and Order issued on February 3, 2012. The Appeals Council on April 26, 2012, referred the case to the same

---

[8]The Bureau of Disability Determination is an agency of the state which initially evaluates applications for supplemental security income benefits on behalf of the Social Security Administration. Tr. 39.

administrative law judge to conduct a second hearing and with instructions, inter alia, to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairments and to determine whether an earlier onset date is warranted." Tr. 436.

Prior to the remand order, Kitchen on September 9, 2009, filed with the Social Security Administration a new application for SSI benefits. Tr. 349 and 396.  A hearing on that application was held before a different administrative law judge on July 12, 2011. Tr. 396 and 725-761.  At that hearing Kitchen amended his alleged disability onset date to September 9, 2007. Tr. 728-729.  On August 30, 2011, the administrative law judge issued a decision finding that Kitchen's impairments - multiple bilateral tarsal coalitions[9] with bilateral degenerative osteoarthritis, congenital pes planus (flat-footed), history of right carpal coalition of the right wrist, status/post carpal tunnel release, status post left elbow surgery, bipolar disorder not otherwise specified, and post traumatic stress disorder - met the requirements of Listing 1.02A, "Major dysfunction of a joint(s)(due to any cause)." Tr. 396-401. Specifically, the administrative law judge stated in pertinent part as follows:

---

[9]Tarsal coalition is a condition where two or more bones in the midfoot or hindfoot are joined or fused. See Tim Luijkx, M.D., & Behrang Amini, M.D., Tarsal coalition, Radiopaedia.org, http://radiopaedia.org/articles/tarsal-coalition (Last accessed May 18, 2015).

> A review of the claimant's record indicates that he previously filed [an SSI] application for benefits, alleging a disability onset date of June 1, 1999.[10] This application was denied initially and at the hearing level in an unfavorable decision by Administrative Law Judge Richard Zack dated September 8, 2007. By Notice dated February 5, 2010 the Appeals Council denied the claimant's request for review of Judge Zack's decision thereby making that decision the final and binding decision of the Commissioner. The undersigned does not find a basis for reopening the claimant's prior [SSI] application[]. . . . Accordingly, the period through the date of that decision is precluded from review by application of the doctrine of res judicata and the period at issue herein is from September 9, 2007, the day after Judge Zack's unfavorable decision, and the amended onset date through the date of this decision.
>
> \* \* \* \* \* \* \*
>
> After careful review of the entire record, the undersigned finds that the claimant has been disabled from September 9, 2007, through the date of this decision. Although the claimant has alleged an earlier disability onset date of September 9, 2007, supplemental security income does not become payable until the month after the month in which the application is filed, assuming all eligibility requirements are met[].[11]

---

[10] In the prior application Kitchen actually alleged a disability onset date of September 30, 2005. Tr. 52. In the application filed on September 9, 2009, Kitchen alleged that he became disabled on June 1, 1999.

[11] The alleged disability onset date of June 1, 1999, had no impact on Kitchen's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See 20 C.F.R. § 416.501. However, if the ALJ had reopened the prior case the application date of the prior case would have controlled and benefits would have been payable from the amended alleged disability onset date of September 9,2007, because the prior application was protectively filed on October 1, 2005.

> \*   \*   \*   \*   \*   \*   \*
>
> The claimant's impairment meets listing 1.02A. This section requires a major dysfunction of a joint(s) (Due to any cause): characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b.[12]
>
> According to the medical evidence the claimant has a well documented history of being diagnosed with and treated for multiple bilateral tarsal coalitions with bilateral degenerative osteoarthritis and congenital pes planus. These diagnoses are confirmed by numerous treating and examining podiatrists, whose treatment records document continuing pain with standing and ambulation, painful and decreased range of motion of the bilateral feet and ankles, significant bilateral deformities of the bilateral feet and ankles, decreased strength in the bilateral ankles, and antalgic and/or abnormal gait, joint deformity and instability, muscle atrophy, tenderness of the bilateral ankles and feet, significant spurring, and decreased bilateral arch

---

[12] In order for an individual to "ambulate effectively" the "individual must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to anf from a place of employment or school. Therefor, examples of ineffective ambulation, include, but are not limited to the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."

>               height. The claimant's symptomatology has persisted
>               despite ongoing treatment with narcotic pain medications
>               and the use of prescribed braces.  Although referred
>               for possible surgical intervention due to his persistent
>               symptomatology he was determined not to be a surgical
>               candidate.

Tr. 396-399.  The administrative law judge who addressed the second application found that Kitchen met the requirements of the listing and was disabled since September 9, 2007, and was aware that there was a pending appeal before this court relating to the first application.  Tr. 401 and 729.

Kitchen contends that he is entitled to an award of benefits commencing on October 1, 2005, or at least an award as of September 9, 2007.  He makes several arguments in support of his claim.  With respect to his contention that benefits should be awarded as of October 1, 2005, he raises the following three issues: (1) the administrative law judge failed to obtain testimony from a medical expert in violation of the remand order of the Appeals Council dated April 26, 2012; (2) the administrative law judge committed reversible error by improperly rejecting the opinion of a consultative examiner; and (3) the administrative law judge erred by relying on answers to incomplete hypothetical questions. The court discerns no merit in these argument because Kitchen amended his alleged onset date at the hearing on the second application for SSI to September 9, 2007. Kitchen's arguments relate to a period before that date. Consequently, Kitchen's arguments are moot and it is not

9

necessary to review the medical evidence prior to that date. Furthermore, because he was found disabled based on the second SSI application as of September 9, 2007, it is unnecessary to review any of the medical evidence after that date.

The issue is solely whether Kitchen should have been awarded a period of disability beginning on September 9, 2007. The administrative law judge who ruled on the first application assumed he could not consider the period from September 9, 2007 to September 9, 2009, because 20 C.F.R. § 416.935 precludes payment of SSI benefits for any month prior to the month following the month an application is filed. The second application was filed on September 9, 2009, and the administrative judge who addressed the first application utilized that date when applying 20 C.F.R. § 416.935 instead of the date the first application was protectively filed, i.e., October 1, 2005. The Commissioner has not explained why the October 1, 2005, filing date should not control the disposition of the first case which was remanded by Judge Nealon for further proceedings.

There is a general principle that because the Social Security Act is a piece of remedial legislation, it is to be interpreted liberally. See, e.g., Dixon v. Shalala, 54 F.3d 1019, 1028 (2d Cir. 1995); Papciak v. Astrue, 742 F.Supp.2d 765, 769 (W.D.Pa.2010); Modla v. Gardner, 251 F.Supp. 617, 620

(M.D.Pa. 1966).  This is a factually unique case and the court was unable to find any analogous cases. Based on the duty of liberal construction of the Social Security Act and the regulations promulgated thereunder, the court concludes that the protective filing date of the first application should control and that the administrative law judge erred when he failed to consider the period from September 9, 2007, to September 30, 2009.

      Our review of the administrative record reveals that the decision of the Commissioner contains legal error requiring a remand with directions to award benefits to Kitchen, if Kitchen was financially eligible, for the period September 9, 2007, through September 30, 2009.

      An appropriate order will be entered.